IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONY BLEVINS

     v.

JOLENE READ

:
:
:   Civil Action No. DKC 24-22
:
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tort and breach of contract case are the motion for partial summary judgment filed by Plaintiff, (ECF No. 49), motion to exclude expert testimony filed by Plaintiff, (ECF No. 50), cross-motion for partial summary judgment filed by Defendant, (ECF No. 58), and the motion to seal filed by Defendant, (ECF No. 60).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for partial summary judgment filed by Plaintiff will be denied, the motion to exclude expert testimony filed by Plaintiff will be denied in part and granted in part, the cross-motion for partial summary judgment filed by Defendant will be denied, and the motion to seal filed by Defendant will be granted.

I.    **Background**

A.    **Factual Background**

This case stems from the brief relationship[1] between two coworkers, the nature of which is hotly debated. Both parties previously worked at MainSpring, Inc. ("MainSpring"), an information technology firm located in Frederick, Maryland. (ECF No. 9 ¶¶ 9, 11). Plaintiff is based in Maryland, (*Id.* ¶ 3), and Defendant is based in New Hampshire, (*Id.* ¶ 4). When they met, Plaintiff was married and Defendant was engaged. (*Id.* ¶ 13). It is uncontested that the parties had sexual interactions on multiple occasions in the summer and fall of 2022, but the parties have different accounts of the nature of those interactions. *Compare* (ECF No. 9 ¶ 21, 33, 39, 45) (Plaintiff describing their interactions as "consensual") *with* (ECF No. 13, at 40) (Defendant describing their interactions as "nonconsensual sexual contact"). Plaintiff asserts that the relationship was a consensual romantic affair, (ECF No. 9 ¶ 96), while Defendant asserts she endured harassment and assault from Plaintiff, (ECF No. 13, at 10). During that period, the parties "communicated via messages on Apple iCloud Notes application," (ECF No. 13, at 3), which Plaintiff alleges

---

[1] The court uses the word "relationship" to describe the parties' interactions between June 2022 and December 2022 purely for ease of reference. The court does not imply anything about the nature of those interactions.

was to prevent Defendant's fiancé and Plaintiff's wife from learning about their relationship. (ECF No. 9 ¶ 24). Both parties agree that the relationship ended in early December 2022. (ECF Nos. 9 ¶¶ 54-57; 13, at 24).

On December 9, 2022, Defendant contacted the MainSpring Human Resources ("HR") department to say that she had been assaulted and threatened by a coworker. (ECF No. 9 ¶¶ 63-64).[2] Plaintiff contacted the HR department just a few minutes later to say that he had an affair with Defendant and she was now accusing him of harassment. (*Id.* ¶ 66). On December 12, 2022, Defendant filed a complaint with MainSpring's HR department. (*Id.* ¶ 70). On December 14, 2022, Defendant obtained a Stalking Temporary Order of Protection from the New Hampshire Circuit Court against Plaintiff. (*Id.* ¶ 76). MainSpring placed both parties on unpaid administrative leave until January 11, 2023, the scheduled date of the final hearing on the protective order. (*Id.* ¶ 81). After the hearing was continued, (ECF No. 13, at 29), the parties entered into a civil agreement in early February 2023 dismissing Defendant's stalking petition in return for Plaintiff agreeing not to contact her, among other provisions. (ECF No. 9 ¶ 85-86).

---

[2] The portion of the amended complaint referenced here says that the parties first spoke to the MainSpring HR department on December 9, 2023. From the context of the rest of the document and other filings, that appears to be a mistake; the correct year is 2022.

On March 13, 2023, Defendant filed a renewed stalking petition with the New Hampshire Circuit Court. (*Id.* ¶ 88). She filed the petition after discovering an open letter posted online by Plaintiff, which was addressed to Defendant and described his version of their relationship. (ECF No. 13, at 30). On the same day, Defendant also notified MainSpring's HR department of the website and other behavior, which she alleged was a violation of the settlement agreement. (*Id.* at 32). Plaintiff left his job at MainSpring on March 17, 2023. (ECF No. 9 ¶ 87). Following a hearing, the New Hampshire Circuit Court dismissed the stalking petition. (*Id.* ¶ 91).

## B. Procedural Background

Plaintiff filed the current suit in the Circuit Court for Montgomery County on November 14, 2023, bringing a defamation claim against Defendant. (ECF No. 1 ¶¶ 1, 4). Defendant removed the case to this court on January 4, 2024, (ECF No. 1), and Plaintiff filed an amended complaint on January 26, 2024, (ECF No. 9). Defendant filed a combined answer and counterclaim on February 22, 2024. (ECF No. 13). Defendant asserts seven claims against Plaintiff: defamation, false light invasion of privacy, publication of private facts, intrusion upon seclusion, breach of contract, battery, and false imprisonment. (*Id.*) Following discovery, Plaintiff filed a partial motion for summary judgment

on March 28, 2025. (ECF No. 49). Plaintiff also filed a motion to exclude testimony from one of Defendant's experts on the same day. (ECF No. 50). Defendant opposed the motion to exclude the expert on April 11, 2025, (ECF No. 53), and filed a combined opposition to partial summary judgment and cross-motion for partial summary judgment on April 25, 2025, (ECF No. 58). Defendant filed a motion to seal an exhibit alongside her opposition to Plaintiff's partial summary judgment motion. (ECF No. 60). Plaintiff does not oppose the motion to seal. Plaintiff filed a reply regarding his motion to exclude expert testimony on April 25, 2025, (ECF No. 62), and a combined reply in support of his partial summary judgment motion and in opposition to Defendant's partial summary judgment motion on May 27, 2025, (ECF No. 68). Defendant filed her reply regarding her partial summary judgment motion on June 13, 2025. (ECF No. 69).

## II.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and there is a genuine dispute "if the evidence is such

5

that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court must view the facts and make reasonable inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

This court previously described the standard for considering cross motions for summary judgment:

> When faced with cross motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotations omitted). In doing so, it must "take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (internal citation and quotations omitted).

*Krysztofiak v. Boston Mutual Life Insurance Co.*, No. 19-cv-0879-DKC, 2024 WL 4056975, *3 (D.Md. Sep. 5, 2024). In ruling on summary judgment, the court may consider the exhibits attached to the motions, as "facts in support of or opposition to a motion for summary judgment need not be in admissible form; the requirement is that the party identify facts that could be put in admissible form." *Id.* (quoting *Nordman v. Tadjer-Cohen-Edelson Assocs., Inc.*, No. 21-cv-1818-DKC, 2024 WL 895122, at *8 (D.Md. Mar. 1, 2024), *reconsideration denied*, No. 21-cv-1818-DKC, 2024 WL 1513522 (D.Md. Apr. 8, 2024)).

## III. Analysis

### A.    Motions for Partial Summary Judgment

Plaintiff moves for partial summary judgment on Defendant's counterclaim for breach of the settlement agreement, arguing (1) the claim is precluded under the *res judicata* doctrine by the stalking petition action in New Hampshire, (2) the provision requiring him to delete all private media of Defendant is unenforceable as a matter of public policy, and (3) Defendant did not suffer any damages.  Defendant opposed the motion and cross-moves for partial summary judgment on two categories of damages stemming from Plaintiff's defamation claim: lost wages and legal costs incurred during the New Hampshire proceedings.  Both partial motions for summary judgment will be denied.

### 1.    Plaintiff's *Res Judicata* Argument

Plaintiff argues that the breach of contract action is barred by *res judicata*.  (ECF No. 49-1, at 11).  To determine if *res judicata* applies, the court must first determine the choice of law in this diversity case.

> Where jurisdiction is based on diversity, "the law of the state where the District Court sits . . . controls questions of *res judicata* and collateral estoppel." *St. Paul Fire & Marine Ins. Co. v. Lack*, 476 F.2d 583, 585 (4th Cir. 1973).  This court applies Maryland law, and Maryland, in turn, applies the preclusion

> rules from the state where the original
> judgment was rendered.

*Chartis Prop. Cas. Co. v. Huguely*, 243 F.Supp.3d 615, 626 (D.Md. 2017), *aff'd sub nom.*, *Love v. Chartis Prop. Cas. Co.*, 734 F.App'x 184 (4ᵗʰ Cir. 2018). The original judgment – the determination of the stalking petition – was rendered in New Hampshire, so New Hampshire preclusion law applies. While Plaintiff only raises *res judicata*, collateral estoppel also merits discussion. Under New Hampshire law:

> the doctrine of collateral estoppel bars a party to a prior action, or a person in privity with such a party from relitigating any issue or fact actually litigated and determined in the prior action. *Res judicata*, or 'claim preclusion,' is a broader remedy and bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation.

*Gray v. Kelly*, 161 N.H. 160, 164 (2010) (citing *McNair v. McNair*, 151 N.H. 343, 352-53 (2004)). *Res judicata* applies where "(1) the parties are the same or in privity with one another; (2) the same cause of action was before the court in both instances; and (3) the first action ended with a final judgment on the merits." *Gray*, 161 N.H. at 164 (citing *In re Juvenile 2004-637*, 152 N.H. 805, 808 (2005)). If *res judicata* applies, it bars relitigation of matters actually litigated as well as matters that could have been litigated in the first action. *Id*. Collateral estoppel applies if:

the following requirements are satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; (3) the party to be estopped must have appeared in the first action or have been in privity with someone who did; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue; and (5) the finding must have been essential to the first judgment. *Farm Family Mut. Ins. Co. v. Peck*, 143 N.H. 603, 605, 731 A.2d 996 (1999).

*Barry v. New Hampshire Dep't of Health & Hum. Servs.*, 170 N.H. 364, 367 (2017). *Res judicata* is a "broader remedy" than collateral estoppel, *McNair*, 151 N.H. at 352 (quoting *Grossman v. Murray*, 141 N.H. 265, 269 (1996)), and many litigants bring arguments pertaining to both theories. *See, e.g.*, *id.*; *Gray*, 161 N.H. at 164. Plaintiff restricts his argument to *res judicata*, though his argument seems to more closely track collateral estoppel.

Plaintiff argues that Defendant's breach of contract claim is precluded by the earlier decision in New Hampshire. (ECF No. 49-1, at 11). Defendant counters that the New Hampshire proceeding did not involve the same cause of action, (ECF No. 58, at 10-12), and that the court did not make a final judgment on the merits, (*Id.* at 12).

a.   **Same Cause of Action**

The New Hampshire proceeding sought to determine if Plaintiff had committed the offense of stalking:

> A person commits the offense of stalking if, among other things, that person "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear." [N.H.Rev.Stat.Ann.] 633:3-a, I(a). "Course of conduct" is defined as two or more acts over a period of time, however short, which evidences a continuity of purpose. [N.H.Rev.Stat.Ann.] 633:3-a, II(a). A course of conduct may include, among other things, "[t]hreatening the safety of the targeted person or an immediate family member," "[f]ollowing, approaching, or confronting that person, or a member of that person's immediate family," "[a]ppearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found, or the residence, place of employment or school of a member of that person's immediate family," or "[a]ny act of communication." [N.H.Rev.Stat.Ann.] 633:3-a, II(a)(1)-(3), (7). However, a course of conduct does not include constitutionally protected activity, nor conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person. [N.H.Rev.Stat.Ann.] 633:3-a, II(a). The plaintiff bears the burden to prove "stalking" by a preponderance of the evidence. [N.H.Rev.Stat.Ann.] 633:3-a, III-a; *Fisher*[*v. Minichiello*]*,* 155 N.H. [188,] 190[ (2007)].

*W.C. v. J.W.*, No. 2025-0156, 2025 WL 2418934, at \*1 (N.H. July 17, 2025).

Upon a showing of stalking under N.H. Rev. Stat. Ann. § 633:3-a, "the court shall grant such relief as is necessary to bring about a cessation of stalking." N.H.Rev.Stat.Ann. § 633:3-a(III-a). The statute also notes that the "types of relief that may be granted. . . shall be the same as those set forth in [N.H. Rev. Stat. Ann. §] 173-B." That section is part of the chapter titled "Protection of Persons from Domestic Violence." N.H.Rev.Stat.Ann. §§ 173-B:1-B:26. It includes an expansive list of types of relief, including restraining orders, relinquishment of weapons, granting use of residences, requiring payment of rent and other bills, awarding temporary custody, and payment of financial support. N.H.Rev.Stat.Ann. § 173-B:5(I). It also permits "ordering the defendant to pay the plaintiff monetary compensation for losses suffered as a direct result of the abuse which may include, but not be limited to, loss of earnings or support, medical and dental expenses, damages to property, out-of-pocket losses for injuries sustained, and moving and shelter expenses." *Id.* at (I)(b)(9). New Hampshire courts have interpreted this to expand the preclusive effect to other kinds of relief besides injunctive relief from domestic violence.

11

The New Hampshire Supreme Court previously reviewed the preclusive effect of a decision related to the domestic violence statute, stating "we have defined the term 'cause of action' as 'the right to recover, regardless of the theory of recovery.'" *Gray*, 161 N.H. at 165 (quoting *McNair*, 151 N.H. at 353). The *Gray* court found that *res judicata* precluded a party from re-litigating the party's claim where "the same type of relief [was] available in both cases," *id.*, and analyzed the possible remedies under the domestic violence statute to determine that a subsequent replevin action was barred. *Id.* at 165-67.

In *Gray*, a domestic violence order included a provision requiring the plaintiff to retrieve his belongings from the defendant's home. *Id.* at 163. When considering if the plaintiff's later replevin action was barred by *res judicata*, the court based its decision on the fact that the domestic violence proceeding necessarily required a determination of property rights:

> Replevin is a proceeding in which the plaintiff seeks to recover possession of personal property that has been taken from him. *See* 66 Am.Jur.2d Replevin § 1 (2001). While Gray points out that the purpose of a domestic violence action is to determine whether domestic violence occurred, [N.H.Rev.Stat.Ann. §] 173-B:5 clearly provides authority for the court to grant other forms of relief, including resolving disputes regarding personal property. *See* [N.H.Rev.Stat.Ann. §] 173-B:5, I(b)(3) (Supp. 2009). In this case, both actions are based on the same factual transaction—that is, the

> dispute concerning Gray and Kelly's separation.
> [. . .]
> The provision Gray relies upon specifically authorizes the court to grant the plaintiff "the exclusive right of use and possession of the household furniture, [or] furnishings ... unless the defendant exclusively owns such personal property and the defendant has no legal duty to support the plaintiff or minor children." [N.H.Rev.Stat.Ann. §] 173-B:5, I(b)(3). Therefore, for a court to make an order regarding the right to use or possess household property, it must make a determination regarding ownership of that property. The Salem Family Division made such a determination when it allowed Gray to "retrieve his belongings."

*Id.* at 165-166. It further explained:

> While Gray now seeks compensatory damages, which he claims are unavailable in a domestic violence action, res judicata bars a subsequent suit when, as here, the plaintiff seeks to "present ... grounds or theories of the case not presented in the first action, or ... to seek remedies or forms of relief not demanded in the first action." *Aubert*[ *v. Aubert*]*,* 129 N.H. [422,] 426, 529 A.2d 909[ (1987)] (quotations omitted). Therefore, we hold that res judicata bars the re-litigation of Gray's claim.

*Gray*, 161 N.H. at 166-67.

This case differs from *Gray* in that the New Hampshire court could not have granted damages resting solely on a breach of the settlement agreement; any monetary relief depended on a finding that Plaintiff had violated the stalking statute, which requires a course of conduct.

13

The parties extensively discussed the settlement agreement during the stalking petition hearing, and the judge expressly asked Ms. Read's counsel if a finding on breach of the settlement agreement would require a finding of stalking:

> THE COURT: Counselor, just to ask you, are suggesting -- because I -- looking at the terms of the settlement agreement -- which was not something that was presented to this Court, I don't believe -- was not approved by the court. But to the extent that the settlement agreement provides for a party to obtain a new protective order –
>
> MS. DURST: Um-hum.
>
> THE COURT: -- based upon a breach of that agreement -- I guess my point is, are you suggesting that if I were to find that there was a breach of the agreement, that ipso facto I must find that stalking occurred and enter a protective order?
>
> MS. DURST: [. . .] I'm not saying that this is a per se -- this requires that you make a finding that there's a stalking -- that stalking has occurred and there's a violation. [. . .]

(ECF No. 49-13, at 148). The final order does not even mention the settlement agreement: the document titled "Stalking Final Order of Dismissal" states "The Plaintiff has NOT been stalked as defined in [N.H. Rev. Stat. Ann. §] 633:3-a: CASE DISMISSED." (ECF No. 49-14, at 2). The portion "as defined in [N.H.Rev.Stat.Ann. §] 633:3-a" appears to have been underlined. (*Id.*). The elements of stalking and breach of contract are not coextensive; as the

14

judge previewed in his question to counsel, he could have found that there was a breach of the settlement agreement but still found that Plaintiff had not engaged in a course of conduct constituting stalking. Because Defendant did not have the same right to recover for solely a breach of contract in the earlier proceeding, it is not the same cause of action under the *Gray* court's analysis. Nor can collateral estoppel apply, as there is no evidence that the same issue was decided at all in the earlier proceeding. Accordingly, the claim is not barred by *res judicata* or collateral estoppel. Plaintiff's motion for partial summary judgment is denied on this ground.

### 2. Plaintiff's Public Policy Argument

Plaintiff also seeks summary judgment on the portion of the breach of contract claim alleging that he breached the settlement agreement by not deleting private photos of Defendant. He argues that the provision is against public policy, and therefore void, because "[t]he purpose of inserting the provision to permanently delete crucial evidence into the settlement agreement was solely to deprive Mr. Blevins of his Fifth Amendment protections and leave him defenseless in light of a potential criminal prosecution." (ECF No. 49-1, at 13). Plaintiff does not explain how deleting some evidence that allegedly *supports* his version of events amounts

to a Fifth Amendment violation and provides no compelling reason to invalidate this portion of the settlement agreement.

### a.  Waiver of the Affirmative Defense

Defendant asserts a threshold issue, namely that Plaintiff "waived any illegality argument by failing to raise it as an affirmative defense in his Answer to [Defendant]'s Counterclaim." (ECF No. 58, at 14).  Defendant cites to Fed.R.Civ.P. 8(c)(1), which states "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . illegality."  This procedural argument is determined under federal law. *See Willever v. United States*, 775 F.Supp.2d 771, 784 (D.Md. 2011).

Affirmative defenses are generally waived if they were not raised in the first responsive pleading, but this court is not required to find a waiver.

> "Although the summary judgment phase may not be the most appropriate time for raising this affirmative defense . . .[,] [a] defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time,' and the plaintiff is not prejudiced." *Cornell v. Council of Unit Owners Hawaiian Vill. Condominiums, Inc.*, 983 F.Supp.640, 643 (D.Md. 1997) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3ᵈ Cir. 1991)).  Indeed, the [United States Court of Appeals for the ]Fourth Circuit has acknowledged that "[c]ourts have found that affirmative defenses raised for the first time in summary judgment motions may provide the required notice." [*Grunley Walsh*

16

> *U.S. v. ]Raap*, 386 F.App'x [455,] 459[ (4th
> Cir. 2010)].

*Jennings v. Frostburg State Univ.*, 679 F.Supp.3d 240, 269 (D.Md.
2023).

The court declines to find a waiver of this defense.
Defendant was generally on notice from the prior litigation that
Plaintiff believed he should not have to comply with this provision
of the settlement agreement because he and his counsel apparently
believed it would violate his constitutional criminal rights.
Plaintiff discussed his concerns that deleting the photo would
leave him without evidence in the face of a future criminal
complaint during the New Hampshire proceeding.  (ECF No. 49-13, at
102-03, 121-22, 131 ("And then [the deletion provision] – that
goes before a judge, a judge is not going to agree that I should
destroy evidence for a criminal prosecution.")).  Defendant's
counsel also asked several questions related to Plaintiff's
decision during his deposition for this litigation.  (ECF No. 68-
2, at 284-285 ("[DEFENDANT'S COUNSEL:] Okay. Then is it your
testimony that on advice of counsel you then elected to violate
the agreement? [MR. BLEVINS:] Yes, because it could potentially be
destroying evidence used to defend myself in any pending criminal
matter.")).  Defendant has not identified any additional
information she was unable to request or access due to Plaintiff's
delayed formal raising of the argument.  Given that there is little

evidence that Defendant was prejudiced by the delay, the court will consider Plaintiff's argument that the settlement provision is unenforceable.[3]

**b.   Enforceability of Provision**

Plaintiff argues that the provision in the settlement agreement regarding deletion of media is unenforceable as a matter of public policy, as it violates his rights under the Fifth Amendment. (ECF 49-1, at 13-14).  This argument fails.

"Settlement agreements are contractual in nature and, therefore, are generally governed by principles of contract law." *Moore v. Grau*, 171 N.H. 190, 194 (2018) (quoting *Poland v. Twomey*, 156 N.H. 412, 414 (2007) (internal quotation marks omitted)).  The parties included a "Governing Law" clause in their settlement agreement that selected New Hampshire law, (ECF No. 49-12, at 5), which the court will honor.  *Key Gov't Fin., Inc. v. E3 Enters. Inc.*, 2 F.Supp.3d 741, 745 (D.Md. 2014) ("Well-established Maryland law provides. . . that parties to a contract may agree to the law which will govern their transaction[.]" (citation

---

[3] Defendant also suggested that Plaintiff waived this argument through his conduct.  (ECF No. 58, at 15).  Her only support is a case from the United States Court of Appeals for the Sixth Circuit, which expressly relies on Kentucky law. *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 701 (6th Cir. 2019).  Because Defendant presents no evidence that New Hampshire contract law allows the same waiver of illegality arguments, this argument is also unpersuasive.

modified) (quoting *Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011))). Under New Hampshire law,

> [a]n agreement is against public policy if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, as it is sometimes put, if it is at war with the interests of society and is in conflict with the morals of the time.

*Pelissier v. GEICO Gen. Ins. Co.*, 177 N.H. 63, 67 (2024) (citing *Rizzo v. Allstate Ins. Co.*, 170 N.H. 708, 713 (2018)).

Plaintiff argues that the provision in the settlement agreement where both parties agree to delete any private media of the other contravenes public policy because it violates his Fifth Amendment right protecting against self-incrimination. (ECF No. 49-1, at 13). The Fifth Amendment to the U.S. Constitution[4] is the source of several important rights, including that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In practice, this protection extends into the civil litigation context, where "[t]he Amendment . . . privileges him not to answer official questions

---

[4] Plaintiff only argues that his federal Fifth Amendment rights are infringed in this context, not his rights under any state analogue. Because he makes this assertion under only federal law, the court looks to federal law only for the scope of the right.

put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

Plaintiff fails to explain how deleting some evidence that may support his version of events is equivalent to being forced to testify against himself. First, Plaintiff does not allege that the private photographs of Defendant are incriminating evidence. To the contrary, he claims the metadata attached to the photos is "crucial" for any future defense. (ECF No. 68, at 6 n.3). Second, there is no coercion at issue here. Plaintiff chose to enter into a consent agreement with Defendant rather than go to court on her first stalking petition. He attempted to remove the provision at issue during negotiations, (ECF No. 49-4, at 284), but ultimately settled on terms that included a mutual deletion of any photos, (*Id.*).

The cases Plaintiff cites do not help his case. The only provision of the Fifth Amendment Plaintiff specifically cites to is the bar against self-incrimination. (ECF Nos. 49-1, at 13; 68, at 6). Plaintiff's alleged case support justifying his reliance, (ECF No. 68, at 8), is unrelated to that specific protection. In *Holmes v. South Carolina*, 547 U.S. 319 (2006), the United States Supreme Court grounded a criminal defendant's right to a

20

"meaningful opportunity to present a complete defense" in "the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment." *Id.* at 324 (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). *United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010), cites to *Holmes* for the same idea, saying it could be grounded in either the Sixth Amendment or "in the more general Fifth Amendment guarantee of due process." *Id.* at 358. Neither of these cases ground support for the right to present a meaningful defense in the Fifth Amendment bar on self-incrimination. Plaintiff fails to provide any case support for the idea that the bar on compelled self-incrimination somehow encompasses deletion of evidence that could someday be useful in a possible criminal investigation.

Plaintiff has presented no evidence that New Hampshire public policy is against allowing two individuals, represented by counsel, to agree to delete private photos of the other. "Parties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably." *Mills v. Nashua Fed. Sav. & Loan Ass'n*, 121 N.H. 722, 726 (1981). Plaintiff's motion for partial summary judgment is denied on this ground.

### 3.    Plaintiff's Argument Regarding Damages

Finally, Plaintiff moves for summary judgment on the grounds that Defendant did not "prove" that she sustained damages to her reputation and well-being, and that "these damages are not generally considered to be a basis for compensation in contractual actions."    (ECF No. 49-1, at 14).    Plaintiff misstates the requirement at summary judgment, so this argument also fails.

Under New Hampshire law, damages are available in a breach of contract action if the harm was reasonably foreseeable when the parties entered into the contract.    *Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc.*, 138 N.H. 110, 114 (1993); *see also Glynn v. Impact Sci. & Tech., Inc.*, 807 F.Supp.2d 391, 431 (D.Md. 2011), *aff'd sub nom. Glynn v. EDO Corp.*, 710 F.3d 209 (4th Cir. 2013) (applying New Hampshire law).    Defendant has presented sufficient evidence that she suffered damages from the breach, and that those harms were foreseeable, that there remains a genuine issue of material fact.    (*See, e.g.*, ECF Nos. 58-2, at 17 (statement in Defendant's response to interrogatories that "[t]he statements . . . displayed publicly on a website acquired by Plaintiff – Joleneread.com, lowered her reputation to her friends, family, co-workers, potential future employers, and anyone that viewed the website"); 49-11, at 14 (statement in MainSpring HR investigation from before the alleged breach finding "[t]he

reputations for both employees are now at stake and gossip could threaten our workplace culture")). Even Plaintiff acknowledges that Defendant has presented evidence to support damages for her claim. (*See* ECF No. 68, at 10 ("[S]he presented no evidence that her reputation was lowered *besides*" Plaintiff's statements, her termination several months after the breach, and an expert's assessment of Plaintiff's mental health. (emphasis added)). Defendant has provided enough evidence to survive summary judgment on her breach of contract claim, and both parties will have the opportunity to present their evidence to a jury.

Rather than moving to exclude categories of damages from consideration, Plaintiff moved to dismiss Defendant's entire counterclaim for breach of contract. As there remains a genuine dispute of material fact about damages stemming from Defendant's alleged breach, Plaintiff's partial summary judgment motion will be denied on this ground.

### 4.  Defendant's Argument Regarding Categories of Damages[5]

Defendant moves for partial summary judgment on Plaintiff's "damages claims for 'legal costs' and 'lost income,' as such are

---

[5] Precedent varies on whether it is appropriate to move for summary judgment as to specific categories of damages under Rule 56 at all. *Contrast Evergreen Int'l, S.A. v. Marinex Constr. Co., Inc.*, 477 F.Supp.2d 697, 699 (D.S.C. 2007) (declining to read Rule 56(a) and (d) to allow summary judgment on elements of claims rather than the entire claim), *and Felix v. Sun Microsystems, Inc.*, No. 03-cv-1304-JFM, 2004 WL 911303, at *7 (D.Md. Apr. 12, 2004)

not causally connected to his claim for defamation." (ECF No. 58, at 19). Again, the preliminary question of the appropriate law for this motion must be answered. "In diversity actions, a district court applies the substantive law and choice of law rules of the state in which the court sits." *Chartis*, 243 F.Supp.3d at 622 (citing *Padco Advisors, Inc. v. Omdahl*, 179 F.Supp.2d 600, 605 (D.Md. 2002)). Maryland adheres to the *lex loci delicti* rule for tort actions, which holds that the substantive law of the state where the wrong occurred governs the claim. *Williams v. Gyrus ACMI, Inc.*, 790 F.Supp.2d 410, 414 (D.Md. 2011). "[W]here the events giving rise to a tort action occur in more than one State, the court must apply the law of the State where the injury—the last event required to constitute the tort—occurred." *Id.* (citation modified) (quoting *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615 (2006)). Because Plaintiff resides in Maryland and the statements were made to MainSpring's HR department based in Maryland, the injury occurred in Maryland. This court therefore applies Maryland law to determine if Plaintiff is barred, as a matter of law, from pursuing his damages claims for "legal costs"

---

(same), *with Pasadena Boat Works, LLC v. Carolina Skiff, LLC*, 694 F.Supp.3d 599, 609–610 (D.Md. 2023) (assuming without discussing that individual categories of damages can be decided on a Rule 56 motion), *and ELC Transp., Inc. v. Larson Grp., Inc.*, No. 20-cv-964, 2022 WL 673648 (M.D.N.C. Mar. 7, 2022)(same). This dilemma does not need to be resolved, as genuine issues of material fact remain and the motion will be denied regardless.

and "lost income" as part of his defamation suit. (ECF No. 58, at 19). Under Maryland law, a plaintiff may recover for economic loss in a defamation suit, *McClure v. Lovelace*, 214 Md.App. 716, 747 (2013), *aff'd sub nom. Amalgamated Transit Union v. Lovelace*, 441 Md. 560 (2015), but Defendant argues that these categories of damages were not caused by the statements in the complaint, (ECF No. 58, at 23).

A genuine issue of material fact remains for these categories of damages. Defendant argues that Plaintiff's lost wages and legal fees were unconnected to the statements to HR. (*Id.* at 23-24). But Plaintiff has put forward his own account, arguing that the New Hampshire proceedings were instigated to "bolster" the report to HR, (ECF No. 68, at 17), and that his change in employment was directly related to the statements to HR. (*See, e.g.,* ECF Nos. 58-6, at 7 (HR representative from MainSpring saying that any recommendation to terminate Plaintiff would depend on the outcome of the New Hampshire proceedings); 58-12, at 1 (Plaintiff's resignation letter where he states "I can no longer work for a company who, after stating [it] has conducted a thorough, complete, and fair workplace investigation into the flagrantly false allegations put forth by another employee against me and determined the allegations to be false, continues to employ said employee.")).

Because a genuine issue of material fact remains, Defendant's motion for partial summary judgment will be denied.

### B.    Plaintiff's Motion to Exclude Expert Testimony

Expert testimony is governed by Federal Rule of Evidence 702. Under the Rule, the district court has "a special obligation . . . to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).  According to the Rule,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed.R.Evid. 702.  As anticipated in Rule 702(a), part of the inquiry is focused on whether an expert provides information outside of the common knowledge of the jury:

> Expert testimony is relevant where it is "sufficiently tied to the facts of the ease [so] that it will aid the jury in resolving a factual dispute." *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.*, 823 F.Supp.2d 334, 341 (D.Md. 2011) (citing

26

> *Daubert*, 509 U.S. at 591)).  Expert testimony
> "is presumed to be helpful unless it concerns
> matters within the everyday knowledge and
> experience of a lay juror." *Kopf v. Skyrm*,
> 993 F.2d 374, 377 (4th Cir. 1993).  Thus, "Rule
> 702 makes inadmissible expert testimony as to
> a matter which obviously is within the common
> knowledge of jurors because such testimony,
> almost by definition, can be of no
> assistance." *Scott v. Sears, Roebuck & Co.*,
> 789 F.2d 1052, 1055 (4th Cir. 1986); *see, e.g.,
> Page v. Supervalu. Inc.*, No. [14-cv-1508-WGC],
> 2015 WL 1439572, at *16 (D.Md. Mar. 26, 2015)
> (finding "[i]t is common knowledge that a
> grape on the floor creates a dangerously
> slippery condition" and "placing mats on the
> floor to prevent dangerously slippery
> conditions clearly lies within the range of a
> jury's common knowledge and experience.").

*Anderson v. Home Depot U.S.A., Inc.*, No. 14-cv-2615-GJH, 2017 WL
2189508, at *4 (D.Md. May 16, 2017*); see also US Wind Inc. v.
InterMoor, Inc.*, 640 F.Supp.3d 390, 405 (D.Md. 2022).

Plaintiff moved to exclude the testimony of Defendant's
expert Ashraf Massoud.  (ECF No. 50).  Defendant states that Mr.
Massoud would testify about the Apple Note at issue in the case,
(ECF No. 53, at 1), which Plaintiff alleges "facilitated private
and intimate communications" between the parties during the 2022
relationship, (ECF No. 50-1, at 1).  Plaintiff argues that Mr.
Massoud's analysis boils down to a text comparison of different
versions of the shared Apple Note,[6] which would be within the realm

---

[6] Plaintiff challenges the lack of forensic analysis in Mr.
Massoud's report but he does not acknowledge that he failed to
make his phone available for a forensic analysis.  (ECF No. 50-4,

of the jury's expertise.  (ECF No. 50-1, at 5).  Defendant opposes, saying:

> Mr. Massoud's testimony provides necessary technological explanations to the factfinder regarding what Apple Notes are, the features of Apple Note, and the editability of such Notes.  Mr. Massoud's opinion and report also identifies the multitude of technological inconsistencies among the various of versions of Mr. Blevins's note that he has produced through Discovery.

(ECF No. 53, at 2).  Ultimately, this court agrees with Defendant that the testimony of Mr. Massoud should not be excluded in its entirety, but there may be limits on the scope of Mr. Massoud's testimony.  The motion will be denied in part and granted in part, as described below.

The authenticity of the Apple Note that the parties used to communicate between June 2022 and December 2022 is a hotly contested issue.  (*See* ECF Nos. 50-1, at 2; 53, at 4-5).  Given that the nature of their communications would provide information about the nature of their relationship, having an expert opine on

---

at 4 ("Plaintiff/Counter-Defendant Tony Blevins refused to allow his iPhone to be forensically imaged in order to obtain a copy of an Apple Note that is at issue in this case.").  Rewarding Plaintiff for withholding his phone by discrediting this expert for the lack of complete forensic analysis would create a perverse incentive.  Magistrate Judge Sullivan previously ruled on a motion to compel related to the collection of information from Plaintiff's phone and computer, (ECF No. 40), and this motion to exclude will be denied regardless, so there is no need to wade further into the fray.

Apple Notes generally, what kind of information is stored, and how individuals can interact within and edit the Notes would be helpful to the factfinder.  Despite Plaintiff's claims, not every juror can be expected to know the intricacies of how Apple Notes functioned in 2022.  (ECF No. 62, at 6).  Mr. Massoud's report shows that he has the experience and technical expertise required to provide expert testimony on these questions.

Mr. Massoud will also be permitted to testify as an expert on the differences between the text of the different copies of the Apple Note to the extent that the comparison proceeds from the Cellebrite extraction, (ECF No. 50-3, at 5), and requires an explanation of the information provided by that extraction.  He may not, however, testify as an expert solely to point out differences in printed documents that are visible to anyone.  As Plaintiff points out, finding those discrepancies in the text is something the factfinder is more than capable of doing; an expert is unnecessary.  *See In re Under Armour Sec. Litig.*, 730 F.Supp.3d 172, 180 (D.Md. 2024) (limiting an expert's scope of testimony where an "opinion invade[d] the authority of the trier of fact to determine for itself the plain meanings of the evidence presented at trial.").  Plaintiff and Defendant will both be able to make their arguments regarding the textual differences among the versions of the Apple Note through other avenues.

C.    **Motion to Seal**

Decisions on motions to seal are intended to balance the individual's interest in privacy with the "qualified right of access to judicial documents and records filed in civil and criminal proceedings" of the press and general public. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). The *Public Citizen* court further explained that:

> When presented with a motion to seal, the law in this Circuit requires a judicial officer to comply with the following procedural requirements: (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Id.* at 272 (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000). Local Rule 105.11 requires the party seeking sealing to provide "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

Defendant asks the court to seal an exhibit filed in support of her opposition to Plaintiff's motion for partial summary judgment, which she identified as a report from a forensic

30

psychiatrist. (ECF No. 60 ¶ 3). Defendant asserts that the report contains "highly personal information about Defendant's difficult childhood, mental health history, and other personal challenges she has faced." (*Id.* ¶ 4). Plaintiff does not oppose sealing the report. Defendant notes that she is a private figure, and that Plaintiff and his counsel have a complete copy of the report. (*Id.* ¶¶ 7-8). Given the strong personal interest in privacy and the diminished interest in public access here, the court will grant Defendant's motion to seal the exhibit as it relates to this stage of the litigation.

## IV. Conclusion

For the foregoing reasons, the motion for partial summary judgment filed by Plaintiff (ECF No. 49) will be denied, the motion to exclude expert testimony filed by Plaintiff (ECF No. 50) will be granted with respect to comparing the text of the different printed versions of the Apple Note and otherwise denied, the cross-motion for partial summary judgment filed by Defendant (ECF No. 58) will be denied, and the motion to seal filed by Defendant (ECF No. 60) will be granted. A separate order will follow.

                                    /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge